IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| VENICE GENOA TILE, LLC, an Oregon limited liability company,<br><br>    Plaintiff,<br><br>    v.<br><br>PANARIAGROUP Industrie Ceramiche S.p.A., an Italian corporation,<br><br>    Defendant. | No. 08-482-HU<br><br>FINDINGS AND RECOMMENDATION |

Slone K. Pearson
Hagen O'Connell
121 S.W. Morrison, Suite 1500
Portland, Oregon 97204
    Attorney for plaintiff

Gary I. Grenley
Paul H. Trinchero
Grenley Rotenberg Evans Bragg & Bodie
1211 S.W. Fifth Avenue, Suite 1100
Portland, Oregon 97204
    Attorneys for defendant

HUBEL, Magistrate Judge:

    Plaintiff Venice Genoa Tile (VGT) brought this action against defendant Panariagroup Industrie Ceramiche S.p.A., an Italian

FINDINGS AND RECOMMENDATION Page 1

corporation, asserting a contract claim for breach of the implied covenant of good faith and fair dealing. Defendant moves to dismiss for lack of personal jurisdiction, insufficient service of process, and the existence of another action on the same subject matter pending in Italy. Alternatively, Cotto d'Este moves to quash service of process and/or to stay this action pending the outcome of the action in Italy.

VGT is an Oregon and Washington limited liability corporation with its principal place of business in Vancouver, Washington. VGT also maintains a showroom, shop and offices in Portland, Oregon. Defendant Panariagroup Industrie Ceramiche (Panariagroup) is an Italian corporation doing business in Italy. Cotto d'Este Nuove Superfici (Cotto d'Este) is a division of Panariagroup.

### Allegations of Complaint

The complaint alleges that in the spring of 2006, VGT and Cotto d'Este negotiated for the purchase by VGT of a tile product called Kerlite. Complaint ¶ 5. VGT agreed to purchase Kerlite for distribution upon Cotto d'Este's representation that an exclusive distributor for Kerlite would not be appointed in the Pacific Northwest. Id. VGT developed a marketing and sales strategy for Kerlite. Id.

In August 2007, VGT placed an order for $39,046.32 worth of Kerlite from Cotto d'Este. At the time the order was placed, VGT was unaware that Cotto d'Este had begun negotiations with a Seattle company for an exclusive distributorship agreement, an agreement executed in December 2007. Id. at ¶ 8. As a result, VGT alleges it

FINDINGS AND RECOMMENDATION Page 2

was unable to create a market for the Kerlite or price it competitively. Id. at ¶ 10. VGT rejected the shipment and refused to pay the invoiced amount. Id. at ¶ 11.

### Jurisdictional Facts

According to the Declaration of Francesco Pollastri, Cotto d'Este is a publicly traded Italian company doing business through offices and a warehouse located in the Modena province of Italy. Pollastri Declaration ¶ 5. All sales orders and contracts for the Cotto d'Este products are sent to its offices in Italy for approval. Id. at ¶ 7. If a sales order is approved, a confirmation of the order is sent to the customer from Cotto d'Este's office in Italy. Id. at ¶¶ 7, 14. After a sales order is approved, the customer is contacted to make arrangements for shipping. Id. at ¶ 14. Cotto d'Este has a policy of shipping its products Ex Works, which means that delivery occurs when Cotto d'Este places its goods at the disposal of the buyer at the seller's premises or another named place not cleared for export and not loaded on any collecting vehicle. See id. at ¶ 14, Exhibit 1 and Claudia v. Olivieri Footwear Ltd., 1998 WL 164824 (S.D.N.Y. 1998)(discussing meaning of Ex Works).

Cotto d'Este obtains some of its sales orders through brokers known as "sub-agents." Pollastri Declaration ¶ 7. Sub-agents are not employees of Cotto d'Este and typically represent a number of different manufacturers. When a sub-agent obtains a sales order, the order is forwarded to Cotto d'Este's Italian office for approval. Id. at ¶¶ 7, 14. Sub-agents do not have authority to

FINDINGS AND RECOMMENDATION Page 3

1 accept orders on behalf of Cotto d'Este or to bind Cotto d'Este to
2 contracts. Id. at ¶ 7.

3     Davide Marchesi is a broker or sub-agent for Cotto d'Este who
4 sometimes works with customers in the United States. Id. at ¶ 14.
5 See also Declaration of Davide Marchesi ¶ 3. Mr. Marchesi is a
6 citizen of Italy, residing in Italy. Marchesi Declaration ¶ 2.
7 Cotto d'Este is one of several manufacturers of ceramic, granite
8 and marble products that Mr. Marchesi represents through his
9 English company, Snow Mount. Id. at ¶ 3. Mr. Marchesi is not
10 authorized to approve sales orders for Cotto d'Este, nor is he
11 authorized to enter into any contracts on behalf of Cotto d'Este.
12 Marchesi Declaration ¶ 8; Pollastri Declaration ¶¶ 7, 14. Mr.
13 Marchesi submits all sales orders he receives to Cotto d'Este's
14 office in Italy, for review and approval by Cotto d'Este. Marchesi
15 Declaration ¶ 8; Pollastri Declaration ¶ 14. Mr. Marchesi is paid
16 a sales commission on completed sales of Cotto d'Este's products.
17 Marchesi Declaration ¶ 3.

18     Mr. Marchesi made a sales call on VGT in the spring or early
19 summer of 2006, meeting with Mario Dodici, one of the owners of
20 VGT, in VGT's Portland showroom. Marchesi Declaration ¶ 4. VGT did
21 not order any Cotto d'Este products during this meeting. Id. About
22 July 14, 2006, Adam Moiso, VGT's manager in Vancouver, Washington,
23 sent an email to Mr. Marchesi in Italy, along with a small order
24 for Cotto d'Este tile. Id. The order was forwarded to Cotto d'Este
25 and approved, and the tile was delivered to VGT in Italy. VGT then
26 had it shipped to Vancouver. Pollastri Declaration, Exhibit 1.
27
28 FINDINGS AND RECOMMENDATION Page 4

About June 20, 2007, Marchesi visited VGT in Vancouver, Washington. Marchesi Declaration ¶ 6. VGT did not place an order for Cotto d'Este products during that visit. Id. Two months later, on August 20, 2007, VGT placed an order through Marchesi. Complaint ¶ 7. The order was approved by Cotto d'Este about September 19, 2007. Id.

At oral argument, counsel for VGT acknowledged that the 2007 order was received in Vancouver, Washington. All correspondence for the transaction was directed to or from VGT's Vancouver location. Pollastri Declaration ¶ 15, Exhibit 1. VGT has refused to pay the invoiced amount of $39,046.32.

In January, February and March 2008, emails between the parties and demand letters from VGT's lawyers went back and forth. On April 15, 2008, Cotto d'Este caused a Writ of Summons to be issued from the Modena Court in order to commence an action in Italy against VGT for the unpaid invoice (the Italian action). Trinchero Declaration ¶ 2, Exhibit 1. The Writ of Summons includes the complaint translated into English demanding payment for the tile. Id. On April 18, 2008, Cotto d'Este filed a lawsuit in the Modena Court. Id. at ¶ 3, Exhibit 2.

The complaint was filed in this case by VGT on April 18, 2008. Summons was issued on April 24, 2008. (Doc. ## 1, 3). On April 29, 2008, VGT attempted to serve the summons and complaint upon Cotto d'Este by having Cindy Hovestadt, a process server in Orlando, Florida, leave them with an employee of Cotto d'Este in a Panariagroup booth at a trade show held Orlando. Trinchero

FINDINGS AND RECOMMENDATION Page 5

Declaration Exhibit 6. The affidavit of service signed by Ms. Hovestadt on April 29, 2008, says:

> Service was perfected at the Orange County Convention Center stall as instructed. The Salesman served confirmed he was an employee of Panariagroup Industrie Ceramiche S.P.A. but would not provide his name (description of employee is provided with this affidavit.) The employee stated that he would ensure the business owner received the documents that day.

Id. The salesman served by Ms. Hovestadt was Francesco Pollastri. Declaration of Francesco Pollastri ¶ 8. Mr. Pollastri states in his declaration that he is not an officer or director of Cotto d'Este, nor is he a registered agent or authorized by Cotto d'Este to accept service on its behalf. Id. at ¶¶ 4, 12. He is, however, a full-time salaried employee of Cotto d'Este, its Overseas Sales Director. Id. at ¶¶ 3, 4.

According to Mr. Pollastri's declaration, a woman entered the Cotto d'Este booth "holding an unmarked envelope." Id. at ¶ 10. When he asked who she was and what her purpose was, she responded by "telling me it did not matter who she was because she was just there to leave some papers." Id. She asked Mr. Pollastri his name, but because the woman refused to identify herself, Pollastri refused to give his name. Id. The woman then handed him the envelope and left the booth without asking any more questions. Id. Mr. Pollastri states that at no point did he tell her he was an employee of Panariagroup, that he was authorized to accept service, or that he would provide the documents to the owner of the business. Id. at ¶ 11.

///

FINDINGS AND RECOMMENDATION Page 6

The Writ of Summons from the Modena Court was served on VGT May 6, 2008. Id. at Exhibit 3. On May 7, 2008, VGT mailed its complaint and service documents to Cotto d'Este. The Italian action is currently pending in the Modena court, with trial set for February 2, 2009. Trinchero Declaration ¶ 2, Exhibit 1.

**Standards**

When a defendant's motion to dismiss is made as its initial response and the court is asked to decide the motion without conducting an evidentiary hearing, plaintiff need only make a prima facie showing that personal jurisdiction exists, *i.e.*, facts that, if true, would support the court's exercise of jurisdiction over the defendant. Mattel, Inc. v. Greiner and Hauser GMBH, 354 F.3d 857, 862 (9th Cir. 2003). Unless directly contravened, plaintiff's version of the facts is taken as true; conflicts between the facts contained in declarations submitted by the two sides are resolved in plaintiff's favor. CE Distribution, LLC v. New Sensor Corp., 380 F.3d 1107, 1110 (9th Cir. 2004). The court need not decide whether plaintiff has proven its contentions, but only whether it has made a prima facie case for personal jurisdiction. Mattel, 354 F.3d at 862.

VGT asserts that specific jurisdiction exists over Cotto d'Este. Specific jurisdiction requires three things: 1) the non-resident defendant must purposefully direct its activities or consummate some transaction with the forum or a resident of the forum, or perform some act by which it purposefully avails itself of the privilege of conducting activities in the forum, thereby

FINDINGS AND RECOMMENDATION Page 7

invoking the benefits and protections of its laws; 2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and 3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable. Yahoo! Inc. v. La Ligue Contre le Racisme et L'Antisemitisme, 433 F.3d 1199, 1205 (9th Cir. 2006). If plaintiff satisfies the first two prongs of this test, defendant must present a "compelling case" that exercising personal jurisdiction would not be reasonable. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004).

Purposeful availment" and "purposeful direction" are two distinct concepts: a purposeful availment analysis is most often used in contract actions, while a purposeful direction analysis is most often used for actions in tort. Id.

**Discussion**

A.  Purposeful availment

The existence of a contract with a resident of the forum state is itself insufficient to satisfy the purposeful availment requirement. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478-79 (1985). This prong of the minimum contacts test requires a "qualitative evaluation" of the defendant's contact with the foreign state, and is met if the defendant engaged in "some type of affirmative conduct which allows or promotes the transaction of business within the forum state." Harris Rutsky & Co. Ins. Serv. v. Bell & Clements, 328 F.3d 1122, 1130 (9th Cir. 2003). Thus, prior negotiations and contemplated future consequences, along with the

FINDINGS AND RECOMMENDATION Page 8

terms of the contract and the parties' actual course of dealing are among the factors to be considered. <u>Burger King</u>, 471 U.S. at 479.

Guidelines relevant to this determination include: 1) who initiated the contact; 2) the origin and destination of the goods; 3) the value of the goods involved in the disputed transaction; 4) the number of contacts defendant had with the forum; 5) where contract negotiation occurred; and 6) prior dealings or future consequences anticipated between the parties that relate to the contract in dispute. <u>Naumes, Inc. v. Alimentos Del Caribe</u>, 77 F. Supp.2d 1158, 1163 (D. Or. 1999); <u>Glenn Walters Nursery, Inc. v. Kenly Farms</u>, 2007 WL 845908 (D. Or. 2007).

The initial contact in this case appears to have been by Mr. Marchesi. VGT asserts that Mr. Marchesi "held himself out to be a sales agent working for" Cotto d'Este and that it was "always Plaintiff's understanding and belief that Mr. Marchesi was employed by Defendant." The actions of Mr. Marchesi and "plaintiff's understanding and belief" are not relevant to the jurisdictional analysis, because jurisdictional contacts must proximately result from actions by the defendant itself. <u>Burger King</u>, 471 U.S. at 475. Mr. Marchesi's actions are not actions by Cotto d'Este, and there is no indication that Cotto d'Este promoted VGT's belief that Cotto d'Este employed Mr. Marchesi.

Similarly, although VGT contends that it anticipated future contracts with Cotto d'Este, including a possible sole distributorship for Kerlite, there is no indication that Cotto d'Este anticipated such future transactions. In fact, VGT's

FINDINGS AND RECOMMENDATION Page 9

allegation that Cotto d'Este entered into an exclusive distributorship contract for the Pacific Northwest with a vendor in Seattle suggests an intention on the part of Cotto d'Este *not* to engage in future transactions in Oregon. VGT's marketing activities, advertising, and purchases of Kerlite for future sale in Oregon are not jurisdictional contacts by Cotto d'Este and therefore have no jurisdictional relevance.

The orders were placed by VGT, some months after the contacts by Mr. Marchesi. Contract negotiations appear to have occurred between Italy and Washington. The goods originated in Italy and their destination was Vancouver, Washington. The value of the goods was relatively small--approximately $40,000.

None of the Naumes factors favors VGT.

VGT contends that specific personal jurisdiction is established pursuant to Or. R. Civ. P. 4D, which provides for jurisdiction

> [i]n any action claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant, provided in addition that at the time of injury, either: 1) [s]olicitation or service activities were carried on within this state by or on behalf of the defendant, or 2) [p]roducts, materials, or things distributed, processed, serviced, or manufactured by the defendant were used or consumed within this state in the ordinary course of trade.

VGT argues that it satisfies these requirements because it has alleged a property injury within the state and an act or omission outside the state by the defendant, *i.e.*, "the Italian Defendant's

FINDINGS AND RECOMMENDATION Page 10

intentional misrepresentation of its distribution model").[1] VGT relies on Oregon cases that deal with causes of action arising, at least in part, from the commission of tortious acts in the state. But the "purposeful direction" theory used for tort cases is different from the "purposeful availment" theory used for claims sounding in contract.

Rule 4D is inapplicable for several reasons. First, there is no evidence that VGT sustained an injury to property "within this state," *i.e.,* in Oregon. The damages claimed by VGT as a result of the alleged false representations about exclusive distributorship include shipping and customs duties and lost profits on contemplated sales of the Kerlite products. There is no allegation that any of these damages represent harm to property "within this state;" the existence of VGT's principal place of business in Washington indicates that any financial consequences of the alleged misrepresentation were sustained in Washington.

Rule 4D's "at the time of the injury" requirement is not met here. The complaint does not identify when the alleged intentional

---

[1] VGT's contention that the basis of its claim against Cotto d'Este is an "intentional misrepresentation" (a tort) is inconsistent with its single cause of action for breach of contract. Further, the claim asserted here, for breach of the implied covenant of good faith and fair dealing, is designed to "effectuate the reasonable contractual expectations of the parties." Best v. United States National Bank, 303 Or. 557, 562. Only the objectively reasonable expectations of the parties to the contract will be examined in determining whether the obligation of good faith has been met. Uptown Heights v. Seafirst, 320 Or. 638 (1995)(en banc). There is no allegation that the tile order at issue in this case created any objective expectation of an exclusive distributorship, or that one would not be established.

FINDINGS AND RECOMMENDATION Page 11

misrepresentation about not having an exclusive distributor was made. Thus it cannot be determined whether the misrepresentation was made at the time of the contract at issue here, or with reference to it. Similarly, it cannot be determined whether the representation was false when made (*i.e.*, after the exclusive distributorship agreement with the Seattle company had been executed).

The requirement of "solicitation or service" activities in Oregon is dubious at best. Mr. Marchesi appears to have first visited VGT in the spring of 2006, on apparently his only visit to Oregon. Later and at separate times, VGT placed two tile orders from Washington. The allegedly breached contract--the second tile order--was placed in August 2007, over a year later, and approximately two months after Mr. Marchesi made a sales visit to VGT in *Vancouver, Washington.* The parties agree that VGT took delivery of the tile in Italy. The tile was shipped Ex Works and its ultimate destination was Washington.

The "purposeful availment" element of personal jurisdiction is not satisfied here.

B.   "Arises under"

Cotto d'Este asserts that VGT has also failed to show that its claims arise out of forum-related activities, arguing that VGT alleges only two transactions with Cotto d'Este, with the activities underlying the transactions occurring in Washington and Italy, not Oregon. Cotto d'Este points out that VGT's principal place of business is in Washington; the tile was ordered in

FINDINGS AND RECOMMENDATION Page 12

Washington; both transactions were invoiced to Washington; and the products were delivered to VGT in Italy and shipped by VGT to Washington. Cotto d'Este argues that other than the fact VGT is registered as an Oregon LLC, there is no connection between the negotiations and transactions for the second tile shipment, or the alleged misrepresentations, and the state of Oregon.

The standard for the "arising out of" requirement is whether the claim arises out of or results from *defendant's* forum related activities. There is no evidence, or any allegation in the complaint, that the dispute about the alleged misrepresentations over exclusive distributorships arose out of any conduct by Cotto d'Este in Oregon. Nor, as discussed, does the dispute about payment on the contract for the second shipment arise out of activities by Cotto d'Este in Oregon.

I conclude that specific jurisdiction over Cotto d'Este does not exist in Oregon, because VGT has not satisfied either the "purposeful availment" requirement or the "arising out of" requirement. Because neither requirement is met, it is unnecessary to consider whether Cotto d'Este has made a "compelling case" that the exercise of personal jurisdiction would be unreasonable. It is also unnecessary to consider Cotto d'Este's alternative argument based on insufficient service of process. I recommend that this action be dismissed for lack of jurisdiction.

C.   <u>Action pending in Italy</u>

If a reviewing court disagrees that this action should be dismissed for lack of personal jurisdiction, I recommend that the

FINDINGS AND RECOMMENDATION Page 13

action be stayed pending the outcome of the action in Italy.

Courts have inherent power to dismiss or stay an action pending resolution of a related foreign proceeding. <u>Landis v. North Am. Co.</u>, 299 U.S. 248, 254 (1936); <u>Cohen v. Carreon</u>, 94 F. Supp.2d 1112, 1115 (D. Or. 2000).

Both parties have cited to the court a case from Massachusetts, <u>Goldhammer v. Dunkin Donuts, Inc.</u>, 59 F. Supp.2d 248, 252-53 (D. Mass. 1999), which lists several factors guiding the court's discretion. They include 1) similarity of parties and issues; 2) promotion of judicial efficiency; 3) adequacy of relief in the alternative forum; 4) issues of fairness to and convenience of the parties, counsel and witnesses; 5) possibility of prejudice to any of the parties; and 6) temporal sequence of the filing of the actions.

Cotto d'Este asserts that all these factors favor staying this action pending resolution of the Italian action. I agree. The parties and issues are the same. The goods were manufactured in Italy by an Italian company. There is no reason to believe a judgment from Italy would not be enforceable in the United States, based on the Uniform Enforcement of Foreign Judgments Act. Or. Rev. Stat. § 24.105 *et seq.* Counsel for VGT acknowledged that its principals immigrated to the United States from Italy and speak Italian. Inconvenience to one of the parties is inevitable, whether the action is tried in Italy or Oregon. The Italian action was initiated first, because it commenced when service of summons was issued on April 15, 2008. The present action was filed at 4:24

FINDINGS AND RECOMMENDATION Page 14

Pacific Daylight Time on April 18, 2008, which was 1:24 a.m. April 19, 2008 in Modena, Italy.

Accordingly, I recommend that if the reviewing court is not inclined to dismiss this case for lack of personal jurisdiction, it stay the action pending the outcome of the Italian action.

## Scheduling Order

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due October 9, 2008. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due October 23, 2008, and the review of the Findings and Recommendation will go under advisement on that date.

Dated this 24th day of September, 2008.

/s/ Dennis James Hubel

Dennis James Hubel
United States Magistrate Judge

FINDINGS AND RECOMMENDATION Page 15